IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RANDOLPH KINZER and MONA LISA KINZER, ) ) Plaintiffs, ) ) v. ) ) METROPOLITAN GOVERNMENT OF ) NASHVILLE and DAVIDSON COUNTY, and ) JOHN A. WELLS, IV, individually and in his ) official capacity, ) ) Defendants. ) | Case No. 3:06cv0649 Judge Thomas A. Wiseman, Jr. Magistrate Judge John S. Bryant |

## MEMORANDUM OPINION

Before the Court is the Motion for Partial Dismissal (Doc. No. 7) filed by Defendant John A. Wells, IV ("Defendant Wells"), which Defendant Metropolitan Government of Nashville and Davidson County ("Defendant Metro") has joined (Doc. No. 16). Defendants contend that the loss-of-consortium claim brought by Plaintiff Mona Lisa Kinzer must be dismissed as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because such a claim is not cognizable "under" 42 U.S.C. § 1983. As discussed below, the Court finds that there is no binding case law in this circuit requiring dismissal of Ms. Kinzer's claim for loss of consortium, and that it is permissible as a pendant state-law claim. Defendants' motion will therefore be denied.

**I. BACKGROUND**

Plaintiffs Randolph and Mona Lisa Kinzer allege in their complaint that Mr. Kinzer was shot and injured by Defendant Wells, a park police officer employed by Defendant Metro, in violation of Mr. Kinzer's constitutional rights. The complaint expressly states that it is brought pursuant to 42 U.S.C. § 1983, and this Court's jurisdiction is invoked under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights violations). Plaintiffs do not specifically assert that the Court has supplemental jurisdiction of any claims under 28 U.S.C. § 1367.

Count I of the complaint asserts a claim by Mr. Kinzer under § 1983 against Defendant Wells individually, based upon the alleged use of excessive force in shooting and severely injuring Mr. Kinzer, in violation of his constitutional rights. Count II asserts a claim against Defendant Metro for, among other things,

failure to train, supervise and discipline Wells, evidencing a deliberate indifference to Mr. Kinzer's rights. Count III states simply: "The conduct of Defendant [sic] resulted in the loss of consortium, love, affection, services and companionship of Plaintiff Mona Lisa Kinzer with respect to her husband, Randolph Kinzer." (Compl. ¶ 18.)

Defendants now seek dismissal of Count III on the basis that a loss-of-consortium claim is not cognizable under § 1983.

**II.     STANDARD OF REVIEW**

In order to survive a Rule 12(b)(6) motion, the complaint must allege facts which, if proved, would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In reviewing a motion to dismiss for failure to state a claim, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. In addition, Rule 12(b)(6) must be read in conjunction with Rule 8(a), which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); 5A Wright & Miller, Federal Practice and Procedure, § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard.

**III.    DISCUSSION AND ANALYSIS**

    **A.      Introduction**

Defendants' argument, in a nutshell, is that a derivative claim for loss of consortium is not cognizable under § 1983. In response, plaintiffs point out that loss of consortium, while derivative, is a separate state-law claim authorized by Tennessee statute, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Thus, the loss-of-consortium claim is not asserted *under* § 1983 but *alongside* it as a pendent claim. The issue presented here is whether such a pendent claim is permissible when the sole substantive claim from which it is derived and to which it is appended is brought under § 1983.

As discussed below, the Sixth Circuit has not addressed this precise issue, though it has considered the issue of whether wrongful-death claims may be brought either under or alongside § 1983 claims. The law

2

in that area, though complex because it involves the intersection between state and federal law, is also fairly clear and well established: Wrongful-death actions, if authorized by state law, may be brought in conjunction with § 1983 actions and may provide for damages to a decedent's family members, including loss-of-consortium-type damages. Section 1983 itself, however, does not provide a mechanism for a decedent's family members to recover their own damages, regardless of whether such damages are or are not available under state law.

Because wrongful-death claims are similar to loss-of-consortium claims insofar as they are both derivative actions that permit the recovery of damages by persons other than the party directly injured by the alleged wrongful actions, this Court believes that the Sixth Circuit, if confronted with the issue, would hold that a loss-of-consortium claim, to the extent permitted by state law, may be appended to a § 1983 claim even though consortium-type damages are not permitted *under* § 1983 *per se*. The case law in this area is confusing, however. Other district courts confronted with this same issue have reached the opposite conclusion, purportedly based upon pronouncements made by the Sixth Circuit and other courts in the context of wrongful-death claims asserted *under* § 1983, instead of through the mechanism of a pendent state claim. This Court believes that district courts that have concluded that loss-of-consortium claims are not permissible when appended to a § 1983 claim have misconstrued Sixth Circuit precedent. Consequently, what follows below is a fairly extensive, though not exhaustive, review of the case law leading to this Court's ultimate conclusion. In making that journey, the Court will first consider whether Ms. Kinzer has succeeded in stating a cause of action under Tennessee law for loss of consortium. Finding that she has done so, the Court will then trace the development of the case law in the area of derivative claims appended to § 1983 actions, which leads to a conclusion that Defendants' motion here must be denied.

        **B.**       **Whether Ms. Kinzer Has Stated a Claim of Loss of Consortium Under Tennessee Law**

As part of their motion to dismiss Ms. Kinzer's loss-of-consortium claim, Defendants point out that Plaintiffs did not specifically reference 28 U.S.C. § 1367(a) as the basis for this Court's jurisdiction over the that claim. In response to Defendants' motion, Ms. Kinzer confirms her intent to "bring[ ] this cause of action . . . as her own individual, viable state law claim for loss of spousal consortium" under Tenn. Code Ann. § 25-1-106. (Doc. No. 18, at 3.) *See McPeek v. Lockhart*, 174 S.W.3d 751, 755 (Tenn. Ct. App. 2005) ("While a loss of consortium claim is a derivative claim, it is also a distinct and separate cause of action from that of

3

the injured spouse's claim." (citing *Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557–58 (Tenn. 2001)). The Kinzers now assert, on that basis, that the Court may exercise its supplemental jurisdiction over the loss-of-consortium claim under 28 U.S.C. § 1367(a).

The Federal Rules of Civil Procedure only require that a complaint contain "a short and plain statement of the grounds upon which the court's jurisdiction depends, *unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it.*" Fed. R. Civ. P. 8(a)(1) (emphasis added). Rule 8(a)(1) is satisfied if the complaint generally "say[s] enough about jurisdiction to create some reasonable likelihood that the court is not about to hear a case that it is not supposed to have the power to hear." *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir.1994). Thus, it is "not essential that a complaint set forth the statutory basis for the court's jurisdiction in order to assume jurisdiction, if the facts alleged provide a basis for the assumption of jurisdiction." *AmSouth Bank v. Dale*, 386 F.3d 763, 779 (6th Cir. 2004) (quoting *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978)). *See also Eriline Co. S.A. v. Johnson*, 440 F.3d 648 (4th Cir. 2006) (holding that exercise of jurisdiction over plaintiff's state law claims was proper on the basis of supplemental jurisdiction even though the plaintiffs had erroneously claimed diversity jurisdiction, because a legitimate federal question was also presented and the state law claims formed part of the same case or controversy as the federal claim); *Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467 (6th Cir. 1964) (finding federal-question jurisdiction existed even though the asserted basis for jurisdiction was diversity of citizenship and it turned out that the parties were not completely diverse).

Here, the complaint sets forth a federal question—Mr. Kinzer's § 1983 claim—as the primary basis for this Court's jurisdiction, so it is obvious the Court is "not about to hear a case that it is not supposed to have the power to hear." *Hammes*, 33 F.3d at 778. In addition, the complaint articulates a separate claim for loss of consortium, and, as Defendants acknowledge, it alleges facts that would support such a claim under Tennessee law. Loss-of-consortium damages are also asserted in the "Damages" portion of the complaint. The Court therefore finds that Plaintiffs' failure to assert § 1367 as a basis for jurisdiction does not deprive this Court of jurisdiction of that claim, and that Ms. Kinzer has adequately asserted a claim for

4

loss of consortium under Tennessee law.[1]

### C. Whether a Pendent Derivative Claim for Loss of Consortium Is Permissible, When the Sole Substantive Claim Is Alleged Under 42 U.S.C. § 1983

Given that Ms. Kinzer has adequately pleaded a state-law claim for loss of consortium, the real question is whether such a claim is cognizable under the circumstances presented here. Defendants argue that, in the Sixth Circuit, section 1983 claims are "entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). Consequently, "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Id.* On this basis, Defendants argue that Ms. Kinzer cannot state a claim for loss of consortium under § 1983. In response, Plaintiffs concede that Ms. Kinzer cannot bring a *federal* claim for loss of consortium *under* § 1983, but argue that federal law in this area does not bar a pendent state claim for loss of consortium.

Under Tennessee law, Tenn. Code Ann. § 25-1-106, "[t]here shall exist in cases where such damages are proved by a spouse, a right to recover for loss of consortium." Basically, a claim for loss of consortium recognizes that when a person is injured by the tortious act of another, whether negligent or intentional, the injury may have an effect beyond the loss sustained by the injured person. Thus, the purpose of the cause of action is to obtain damages to that injured person's spouse when the injury causes their marital relationship to suffer such that the plaintiff is deprived of his or her spouse's "company, companionship and assistance." *Cross v. City of Memphis*, No. 02A01-9807-CV-00199, 1999 WL 236405, at *4 (Tenn. Ct. App. April 22, 1999); *see Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 109 (Tenn. 1996) ("[T]he basis for recovery for loss of consortium is interference with the continuance of a healthy and happy marital life and injury to the conjugal relation." (citation omitted)).

An important element of a party's claim for loss of consortium in Tennessee is that the defendant must actually be liable for the injuries to the spouse. Thus, an action for loss of consortium in Tennessee is derivative in that it "originates from" or "owes its existence to" the spouse's claim for personal injuries.

---

[1]*Cf. Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 374 n.8 (E.D. Pa. 2002) (finding that co-plaintiff spouse had adequately pleaded a state-law claim for loss of consortium under the federal rules' requirement for notice pleading, even though the spouse was not mentioned in the complaint other than being named as a plaintiff, but that defendants clearly had adequate notice of the claim since they had taken discovery of the spouse and moved for summary judgment of the consortium claim).

5

*Hunley*, 38 S.W.3d at 557. However, Tennessee law is also clear that, in the personal injury context, "loss of consortium is a separate claim from that of the injured spouse." *Id.* (citations and internal quotation marks omitted). *See also Bryant-Bruce v. Vanderbilt Univ.*, 974 F. Supp. 1127, 1148 (M.D. Tenn. 1997) (recognizing that loss of consortium is "a right of action separate from that of the spouse"); *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989) (rejecting the defendant's contention that loss of consortium was simply "an element of injury," noting that it was instead a "cause of action separate from plaintiff's action for bodily injury, based on losses to plaintiff caused by physical injuries to plaintiff's spouse"). Consequently, a spouse's "right to recover for loss of consortium is a right independent of the [other] spouse's right to recover for the injuries themselves." *Swafford v. City of Chattanooga*, 743 S.W.2d 174, 178 (Tenn. Ct. App. 1987).[2]

---

[2] Although loss of consortium is an independent state-law claim, in some instances federal or state law may limit the type of claims that may be made or damages that are recoverable, thus barring claims for loss of consortium along with other state causes of action. For instance, because "the measure of recovery" in a wrongful-death action under the Federal Employers' Liability Act ("FELA") is "the damages . . . [that] flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received," *Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 493 (1980), loss of consortium damages are not available under the FELA. *N.Y. Cent. & H.R.R. Co. v. Tonsellito*, 244 U.S. 360 (1917); *Mich. Cent. R.R. v. Vreeland*, 227 U.S. 59 (1913)). Similarly, ERISA may preempt loss-of-consortium claims as well as other state-law claims, *see, e.g.*, *Ackerman v. Fortis Benefits Ins. Co.*, 254 F. Supp. 2d 792, 813 (S.D. Ohio 2003), as do many states' workers' compensation laws, including Tennessee's. *See, e.g.*, *Hunley*, 37 S.W.3d at 558 ("[A] worker's spouse has no right to bring suit against the employer for loss of consortium [under Tennessee's Workers' Compensation Law]." (citations omitted)). These decisions are generally based upon express statutory provisions narrowing the availability of causes of action or damages. *See, e.g.*, Tenn. Code Ann. § 50-6-108(a) ("The rights and remedies granted to an employee subject to the Workers' Compensation Law . . . on account of personal injury or death by accident . . . shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death."); *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 582 (6th Cir. 2002) (noting that ERISA's preemption clause, 29 U.S.C. § 1144(a), states that the act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," and further observing that the "Supreme Court has interpreted this clause to preempt state-law causes of action").

In addition, several federal district courts have dismissed loss-of-consortium claims based upon state or federal civil rights violations, on the basis that the statutes empowering a private right of action, whether under the ADA, the ADEA or Title VII, only authorize the "person aggrieved" within the meaning of the statutes to bring suit and therefore do not permit derivative claims for loss of consortium by the spouse of the person aggrieved. *See, e.g.*, *Mohamed v. Marriott Int'l, Inc.*, 905 F. Supp. 141 (S.D.N.Y. 1995) (finding that the ADA along with the New York State Human Rights Law and a parallel New York city ordinance did not allow for loss-of-consortium claims); *Miller v. CBC Cos., Inc.*, 908 F. Supp. 1054 (D.N.H. 1995) (allowing loss-of-consortium claims ancillary to state law tort claims to stand, but holding that "[t]he spouse of an alleged federal civil rights victim [bringing ADA and Title VII claims] is not permitted an ancillary cause of action for loss of consortium" (citations omitted)); *Reed v. Johnson Controls, Inc.*, 704 F. Supp. 170 (E.D. Wis. 1989) (ADEA preempted spouse's loss-of-consortium claim). *But see Kulling v. Grinders for Indus., Inc.*, 115 F. Supp. 2d 828 (E.D. Mich. 2000) (holding that the ADEA itself did not provide for the recovery of damages under theories of wrongful death or loss of consortium, but that the ADEA did not preempt state wrongful-death or loss-of-consortium claims).

It appears that none of the Circuit Courts of Appeals has actually addressed this question. This Court finds that the cases holding that loss-of-consortium claims ancillary to civil rights claims are not cognizable,

6

In this case, Defendants argue on the basis of two Sixth Circuit opinions and two district court opinions from the Western District of Tennessee, all in the wrongful-death context, that Ms. Kinzer's loss-of-consortium claim is not cognizable because it arises "under" § 1983. The cases upon which Defendants rely, *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000); *Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984); *Robinson v. City of Memphis*, 340 F. Supp. 2d 864 (W.D. Tenn. 2004); and *Alexander v. Beale St. Blues Co.*, 108 F. Supp. 2d 934 (W.D. Tenn. 1999), besides being distinguishable, do not actually support the Defendants' position. In fact, although the precise question presented here has never been considered by the Sixth Circuit (or, to this Court's knowledge, by any other circuit court), *Jaco v. Bloechle* and other Sixth Circuit decisions clearly suggest that Ms. Kinzer's consortium claim is entirely appropriate. Consequently, this Court declines to follow the district court decisions within this circuit that have reached the outcome Defendants seek here; as discussed below, those decisions are not supported by any significant analysis and this Court believes they are incorrect.

The confusion in this area may have started with the case of *Stallworth v. City of Cleveland*, 893 F.2d 830 (6th Cir. 1990). There, the Sixth Circuit was confronted with basically the same issue as that presented in this case. Its holding, however, was dictated by jurisdictional principles established by the Supreme Court in *Finley v. United States*, 490 U.S. 545 (1989), which basically rejected the doctrine of pendent-party jurisdiction. *Finley* was legislatively overruled by the enactment of 28 U.S.C. § 1367 in 1990, about the same time the *Stallworth* opinion was issued but too late to affect its holding.[3] In *Stallworth*, an arrestee filed a civil rights action under § 1983 for wrongful arrest and excessive force and state law claims for assault and battery. Her husband brought federal claims that were dismissed prior to trial, as well as a claim for loss of consortium. At trial, the jury awarded damages to the arrestee against the arresting police officer under § 1983 and against the city of Cleveland on a *respondeat superior* theory for intentional assault, and also

---

though analogous to the situation presented here, are not persuasive. In general they are either dependent on the vagaries of the forum state's loss-of-consortium law or they do not conduct any type of analysis to support their conclusions that "ancillary" claims for loss of consortium are not available. *Kulling* is the exception in that it actually conducts such an analysis and distinguishes between claims brought *under* the civil rights statute at issue (the ADEA in that case) and those brought under state law *alongside* the civil rights claims. *See* note 10, *infra*.

[3]*Stallworth* was issued in January 1990, whereas § 1367 did not go into effect until December 1990. Regardless, the law in effect at the time the district court issued its opinion would have been controlling even if the Sixth Circuit's opinion had been issued after the effective date of § 1367.

7

awarded damages to the husband on his consortium claim. On appeal, the Sixth Circuit reversed the damages awarded to the husband on the grounds that the district court did not have pendent-party jurisdiction over the husband's claim. *Stallworth*, 893 F.2d at 837. To reach that holding, the court relied upon *Finley*, in which the Supreme Court had "reaffirmed its unwillingness to apply pendent jurisdiction to parties." *Id.*

In applying *Finley*, the *Stallworth* court emphasized that the consortium claim was brought by a party over whom no independent basis for federal jurisdiction existed, since his own federal claims had been dismissed prior to trial. An additional important factor identified in *Finley* was whether "the text of the jurisdictional statute" supported the extension of jurisdiction to a pendent party. *Id.* at 838. Section 1983, the jurisdictional statute applicable in *Stallworth*, was construed as not extending to the husband's consortium claim, since the statute only "provides redress to a party suffering injuries from a deprivation of any rights, privileges or immunities secured by federal law." *Id.* Because the wife was the party who had suffered injuries based upon the deprivation of her federal rights, and the husband's loss-of-consortium claim was not based upon an alleged deprivation of his own federal rights, the text of the statute did not reach his claim. Consequently, the court concluded that the district court had erred in extending pendent-party jurisdiction to the husband's loss-of-consortium claim.

Notwithstanding the outcome, the holding in *Stallworth* clearly implied that, but for the pendent-party *jurisdictional* issue, which became a non-issue after the enactment of 28 U.S.C. § 1367, the husband's state-law loss-of-consortium claim would have been valid. The Seventh Circuit reached that same conclusion in a factually similar case decided around the same time, *Niehus v. Liberio*, 973 F.2d 526 (7th Cir. 1992). In *Niehus*, the legal issue was whether the wife of a husband injured by police use of excessive force could "recover damages *under the Constitution* for loss of consortium." *Id.* at 532 (emphasis in original). The court noted that the wife "could have brought a claim under state law for loss of consortium and attempted to append that claim to her husband's as a pendent-party claim," but that such attempt would have likely failed since the case was brought prior to the December 1, 1990 effective date of 28 U.S.C. § 1367(a). *Id.* In any event, the wife "made no state-law claim for loss of consortium but instead staked her all on convincing [the courts] that loss of consortium is a deprivation of 'liberty' within the meaning of the due process clause." *Id.* The Seventh Circuit rejected that attempt, while observing "that the authority newly conferred by Congress

8

[with the enactment of 28 U.S.C. § 1367] to join a state-law claim for consortium with the spouse's constitutional claim, and thus bring both in a federal court, will enable persons similarly situated to the Niehuses to obtain full compensation in a single proceeding. That will make the question whether consortium is a constitutionally protected liberty largely an academic one in future cases." *Id.* at 534.

That prediction, as evidenced by the issue presented here, has not been entirely accurate. In fact, although Ms. Kinzer makes it clear that she is asserting a claim for loss of consortium under state law, Defendants attempt to recast it as a claim brought "under" § 1983 in order to render dismissal appropriate. Notwithstanding, the cases cited by Defendants do not require or even point to such a result. In particular, *Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984), involved a § 1983 action brought by the mother of a deceased son killed by allegedly unjustified police action. The district court had dismissed the action for failure to state a claim on the basis that the decedent's civil rights cause of action did not survive his death under the law of the forum state, Ohio. The Sixth Circuit reversed, holding specifically that the mother had standing to bring a § 1983 claim in her capacity as representative of her son's estate. Its holding was based upon an analysis of the interaction between § 1983 and Ohio's survival and wrongful-death statutes.

In conducting its analysis, the court first observed that "Section 1983 creates a cause of action for deprivation of civil rights. By its own terms, the statute grants the cause of action 'to the party injured.' Accordingly, it is an action *personal* to the injured party." 739 F.2d at 241 (emphasis in original) (quoting 42 U.S.C. § 1983). Where the injured party is deceased, the Supreme Court has recognized that "the law of the forum is the [principal] reference point in determining survival of civil rights actions, subject to the important proviso that state law may not be applied when it is inconsistent with the Constitution and laws of the United States." *Id.* (internal quotation marks omitted; quoting *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978)). Consequently, the court then embarked upon a review of pertinent Ohio law, first stopping to distinguish between survival claims and wrongful-death actions:

> A survival claim is predicated upon the decedent's claim for damages sustained during his lifetime. On the other hand, a wrongful death action creates a new and separate claim or cause of action for the damages sustained by the decedent's estate as a result of his death. The distinction as it arises in conjunction with alleged § 1983 actions is apparent. The § 1983 cause of action . . . is a personal action cognizable only by the party whose civil rights had been violated; while, on the other hand, the wrongful death action is a cause of action that inures to the benefit of the decedent's estate, as a result of, not the personal injury suffered by the *decedent*, but rather, injuries to his estate caused by his wrongful death.

9

*Id.* at 242 (emphasis in original). The court found that, under Ohio's survival-of-claims law, Ohio Rev. Code § 2305.21, the decedent's cause of action for infringement of his civil rights did not survive because he had died instantaneously. Ohio's wrongful-death statute created a cause of action in tort in favor of the decedent's heirs for damages to the estate resulting from the victim's wrongful death, but it did not provide for claims brought on behalf of the decedent based upon violations of his civil rights:

> Certainly, in a sense, the heirs are the injured parties as a result of decedent's premature demise[;] however, to arbitrarily conclude that their injuries resulted from an infringement of their civil rights would be sheer obfuscation of the issue. Simply stated, the wrongful death of the decedent resulting from a tort, which gives rise to the cause of action for the benefit of his heirs, is not equivalent to decedent's personal § 1983 claim, and decedent's administratrix is therefore without standing in the federal forum to commence an action, pursuant to §§ 1983 and 1988, under either the Ohio survivor or wrongful death statute.

*Id.* at 242–43.

Given its conclusion that Ohio law foreclosed the survival of the § 1983 action (and that the state wrongful-death action did not provide a remedy for the decedent's civil rights violations), the court went back to *Robertson v. Wegmann* for direction. According to *Robertson*, section 1988 required a determination of whether "the abatement of the decedent's civil rights action" by the Ohio survivor law would be "inconsistent with the Constitution and laws of the United States." *Id.* (quoting 42 U.S.C. § 1988; *Robertson*, 436 U.S. at 590). Ultimately, because "the relevant state law appear[ed] 'inhospitable to survival of § 1983 actions' " and abatement under the specific facts presented would have an "independent adverse effect on the policies underlying § 1983," *id.* (quoting *Robertson*, 436 U.S. at 594), the *Jaco* court determined that "the federal court must implement the congressional intent [behind § 1983] by allowing survival" of the cause of action even though Ohio state law did not. *Id.* at 245. Thus, the precise holding of the case was that "the decedent's civil rights claim, a personal cause of action, may be pursued in the name of the decedent's personal representative, as defined by the law of the forum jurisdiction. . . . Insofar as [plaintiff] qualifies as her son's representative under Ohio law, she has standing to prosecute the § 1983 claims arising from his death," *id.*, regardless of the fact that the claim was not authorized by Ohio law. Dismissal of the § 1983 claim was therefore reversed.

In other words, the import of *Jaco* was that it read § 1983 expansively to provide a cause of action brought on behalf of the decedent by his next of kin where the law of the forum state would not have permitted such an action, because the forum's restrictive law on survival of actions was considered

10

contradictory to federal law. To be clear, that holding is *not* relevant to the case at bar because Ms. Kinzer's claim is a state-law claim appended to, but not brought under, Mr. Kinzer's § 1983 claim. The *Jaco* decision *is* relevant here, however, insofar as it did not foreclose recovery of any damages or remedies otherwise available to the decedent's next of kin under state law. To the contrary, in fact, as the court specifically observed that the the decedent's family members had the ability to bring a state wrongful-death claim in the same action in which the § 1983 claim was brought:

> Although the district court in this case was apparently aware of the differences between the [wrongful-death and survival] statutes . . . , it stated that "[b]ecause plaintiff seeks relief under the Ohio Wrongful Death Statute . . . the court must determine whether a cause of action for wrongful death survives the death of the decedent under Ohio law, in order to determine whether the claim is cognizable under Section 1988".
> This passage reflects a basic misunderstanding of the application of the wrongful death statute to the instant case. First, it is ambiguous: a cause of action for wrongful death could not possibly abate at the death of the decedent since it is that very event which gives rise to the claim in the first instance. Second, *the claim of Jaco's heirs under the wrongful death enactment is a cause of action separate from the civil rights claim and should have been treated as a state claim subject to the trial court's pendent jurisdiction*. Federal courts look to state survival statutes to determine the validity of the [civil rights] action[;] Ohio's wrongful death enactment creates a cause of action—-it is not a law regulating the survival of the decedent's legal claims. Because it is not adapted to the object of providing for the continuation of personal causes of action, the wrongful death statute is irrelevant to the § 1988 analysis imposed on this action by *Robertson v. Wegmann*, *supra*.

*Id.* at 243 n.5 (emphasis added).

A claimant's ability to bring a pendent, and derivative, state-law claim arising out of the same facts giving rise to a § 1983 cause of action was reconfirmed in *Purnell v. City of Akron*, 925 F 2d 941 (6th Cir. 1991), decided just a year later. There, the administrator of a decedent's estate brought a survival action in which the primary cause of action was a § 1983 claim premised upon constitutional violations by the City of Akron and four police officers that allegedly resulted in the decedent's death. A second count, brought under Ohio's wrongful-death statute, asserted damages suffered by the decedent's legitimate and illegitimate children as his next of kin. The district court concluded it had pendent jurisdiction over the state wrongful-death claim, but denied the illegitimate children's petition to intervene in that claim. The Court of Appeals reversed, finding that the illegitimate children had a substantial interest in the outcome of the litigation and that their interests under the peculiar facts of that case were not adequately represented by the estate's administrator.

In reaching that conclusion, the court considered the administrator's argument that the illegitimate

11

children's rights were not impaired because the true beneficiary of the action was the decedent's estate, not the children. The court observed that this argument was valid with respect to count one of the complaint, which was the § 1983 claim seeking damages for violation of the decedent's constitutional rights. With respect to count two, however, the court observed:

> [R]ecovery under Ohio law for wrongful death depends on each beneficiary's circumstances. In Ohio, a wrongful death action is brought "in the name of the personal representative of the decedent, . . . for the exclusive benefit of the surviving spouse, children, and parents of the decedent, . . . and for the exclusive benefit of the other next of kin of the decedent." O.R.C. [Ohio Rev. Code] § 2125.02(A)(1). The statute further provides that compensatory damages may be awarded for the loss of support from the expected capacity of the decedent, *loss of services and society of the decedent*, loss of prospective inheritance, and mental anguish incurred by the surviving spouse, minor children, parents and next of kind. O.R.C. § 2125.02(B)(1)-(5). As the provision dealing with the distribution of proceeds expressly demonstrates, recovery will vary according to the unique circumstances of each beneficiary.

*Id.* at 949 (emphasis added). In other words, the court expressly recognized that Ohio's wrongful-death statute permitted the recovery of consortium-type damages ("loss of services and society of the decedent") by the decedent's survivors, and thus that each beneficiary's circumstances with respect to recovery in the wrongful-death claim would depend to some extent upon each individual's relationship with the decedent. That finding was a critical part of the court's conclusion that the illegitimate children should have been permitted to intervene as of right. At the same time, because the decedent's estate was adequately represented by the estate's representative with respect to the § 1983 claim, the court observed that it was not required to "address the merits of the difficult question of whether the children of [the decedent] . . . could state a claim for damages under section 1983 based on the killing of their father." *Id.* at 948 n.6.

Once again, as with *Jaco*, the relevance of *Purnell* to the case at bar is its assumption that a derivative state-law claim, in that case a wrongful-death claim that might include loss-of-consortium-type damages, could accompany a § 1983 claim, regardless of whether § 1983 itself would allow damages to anyone other than the person directly injured by the alleged constitutional violations. The issue of whether the family members themselves could bring a § 1983 action based upon the same injuries was not at issue there, nor is it at issue in Ms. Kinzer's case.[4]

---

[4]Although there is a split among the federal circuit courts as to whether the immediate family members of a person killed by unconstitutional government action can recover for their own injuries, those courts that do not allow such recovery are nonetheless uniform in their recognition that family members may nonetheless have standing under state wrongful-death statutes to recover for their own injuries, including loss-of-consortium type injuries if such are permitted by state law. *See, e.g.*, *Andrews v. Neer*, 253 F.3d 1052, 1064

12

In *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000), however, also relied upon by Defendants, the Sixth Circuit addressed, somewhat indirectly, the issue it had sidestepped in *Purnell*: "whether the children of [the decedent] . . . could state a claim for damages under section 1983 based on the killing of their [parent]." *Purnell*, 925 F.2d at 948 n.6. The *Claybrook* plaintiffs were the injured daughter-in-law and the children of the decedent who was killed in a shootout with several police officers. The plaintiffs asserted claims on behalf of the decedent against the officers and various other defendants under § 1983 for use of excessive force resulting in the decedent's death and for failure to train or adequately supervise the police officers; they also asserted several unspecified state-law torts. Defendants moved to dismiss for failure to state a claim and for summary judgment. The district court granted the motion to dismiss counts one and two of the complaint, which were brought under § 1983 but which the district court construed as seeking damages incurred by the individual plaintiffs as a result of the violation of their deceased father's civil rights, rather than on behalf of the decedent's estate. The district court also dismissed the unidentified state law claims under 28 U.S.C. § 1367(c), declining to exercise supplemental jurisdiction over those pendent claims once the federal claims had been dismissed.

The plaintiffs appealed the dismissal of counts one and two but apparently did not appeal the dismissal of their state-law claims. On appeal, the court noted:

> In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort. Accordingly, only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.

*Id.* at 357 (citing *Jaco*, 739 F.2d at 241, among others) (internal citations omitted). In construing the complaint, however, the court noted that, while "certain allegations of the amended complaint also appear to aver that [the decedent's] children suffered personal losses caused by the defendants' alleged impingements of their decedent's constitutionally safeguarded interests, which created some ambiguity regarding the identity of the person(s) whose injuries in fact were asserted in counts one and two, this

---

(8th Cir. 2001) (denying victim's widow recovery for her own injuries under § 1983, noting that the widow had not pursued her own separate wrongful-death claim under which such damages might have been recoverable); *Berry v. City of Muskogee*, 900 F.2d 1489, 1507 (10th Cir. 1990) (holding that wrongful-death-type damages (such as loss of consortium) were not authorized under §§ 1983 and 1988, but noting that wrongful death claims were not foreclosed by § 1983 claims but "remain[ed] as pendent state claims").

13

reviewing forum regards those extraneous allegations to constitute mere surplusage which ultimately have no substantive effect." *Id.* at 357–58. Thus, finding that the plaintiffs had "unequivocally alleged in plain language" that they brought the action as co-administrators of the decedent's estate, and because they had clearly alleged violations of the decedent's civil rights, the court's actual holding was simply that the district court's dismissal of the § 1983 claims articulated in counts one and two was error. *Id.* at 358.

In reaching that holding, the Sixth Circuit implicitly agreed with the district court's determination that "the plaintiffs lacked standing to initiate personal claims [under § 1983] stemming from alleged violations of their deceased father's federally protected liberties," *id.* at 357. However, the court did not address the dismissal of the state law claims and therefore was not required to consider the question of whether the plaintiffs in that case would have had the ability to bring pendent state-law wrongful-death claims for their own damages *alongside* rather than *under* § 1983. In fact, as indicated above, the holdings in both *Jaco* and *Purnell* clearly indicate they could have, so long as such claims were cognizable under the law of the forum state.

The next case cited by the Defendants in support of their argument, *Alexander v. Beale St. Blues Co.*, 108 F. Supp. 2d 934, 954 (W.D. Tenn. 1999), has served to amplify the confusion in this area, although the holding of the court in that case is consistent with those in *Jaco*, *Purnell*, and *Claybrook*, and was based upon the district court's interpretation and application of Tennessee's wrongful-death/survival statutes. In that case, plaintiffs were the parents of a detainee who died at the hands of police, allegedly as a result of excessive force. The parents brought a claim under § 1983 as well as various state-law tort claims. The defendant police officers filed a motion to dismiss plaintiffs' claim for loss-of-consortium damages. In considering the motion, the court did not indicate whether plaintiffs asserted a specific cause of action for loss of consortium. Rather, the opinion states that plaintiffs' demand for damages included claims by the parents on behalf the deceased son as his representatives, and compensation for their own injuries, including loss of consortium, resulting from their son's death. The court stated that, while Tennessee law would control whether plaintiffs could recover for their own personal injuries if defendants were found liable under a state law theory of liability, § 1988 "governs determinations on the applicable survivorship rule in actions brought under § 1983." *Id.* at 950–51. Under 42 U.S.C. § 1988, state statutes relating to the survivorship of actions were the "principal reference point in determining survival of civil rights actions, subject to the important

14

proviso that state law may not be applied when it is 'inconsistent with the Constitution and laws of the United States.' " *Id.* at 951 (quoting *Robertson v. Wegmann*, 436 U.S. at 589–90). Thus, the court held, "Tennessee law will govern plaintiffs' contention that they can recover for their individual injuries regardless of whether liability is founded on state law or § 1983," *unless* liability under § 1983 was found to be inconsistent with federal law. *Id.*

In analyzing Tennessee's wrongful-death statute, Tenn. Code Ann. § 20-5-113, under precedent established by the Tennessee Supreme Court, the district court determined that the statute gives rise to "a single cause of action vested in the decedent's representative, under which two types of damages may be recovered . . . [:] actual damages to the deceased, which include damages for his or her pain and suffering, medical expenses and funeral costs . . . and the pecuniary value of the life of the deceased," the value of which is based upon life expectancy, earning capacity and so forth. *Id.* (citations omitted). *See Jones v. Black*, 539 S.W.2d 123, 124 (Tenn. 1976) (observing that Tennessee's wrongful-death statutes were "somewhat ambiguous" in that they "provide for elements of damages consistent with a theory of survival of a right of action of the deceased but also allow damages consistent, to some degree, with the creation of a new cause of action in the beneficiaries," but that despite this ambiguity Tennessee courts have consistently construed the state's wrongful-death statutes "as being of the survival type, and as preserving the right of action which the deceased would have had, had he survived. This may, indeed, be a fiction, but it is one which is well settled and is well established in our case law[.]").

In other words, the *Alexander* court determined that, unlike many other state statutory schemes, Tennessee law did not permit a separate wrongful-death cause of action, as distinct from a survivor action, in which the plaintiffs would be permitted to assert their own claims for damages. However, because the Tennessee Supreme Court had recently held that certain loss of consortium damages were recoverable as an element of the pecuniary value of the decedent's life, *id.* at 953 (citing *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 601 (Tenn. 1999)), the court was called upon to determine whether such damages should be permitted as *part of* the parents' recovery in their § 1983 claim. Relying upon the Sixth Circuit's observation in *Jaco* that § 1983 actions are "personal to the injured party," the court ultimately held that loss of consortium damages were not available in the § 1983 action, based upon its finding that to permit such

15

damages would be "inconsistent with federal law." *Alexander*, 108 F. Supp. 2d at 953.[5] The court therefore granted the motion to dismiss the loss of consortium claim asserted under § 1983, but noted that plaintiffs could recover loss of consortium damages to the extent they established liability based on state tort law. *Id.* at 954.[6]

Clearly, *Alexander*'s holding that loss of consortium damages were not available in that case is not relevant here because the issue presented was whether the decedent's survivors could recover for their own wrongful-death-type damages *under* § 1983, where Tennessee law did not permit them to bring a separate wrongful-death action for their own damages. Notwithstanding, most district court decisions within this circuit have relied upon *Jaco*, *Purnell* and *Alexander* (to a lesser extent) to conclude, largely without analysis, that a state-law claim for loss of consortium cannot be appended to a federal § 1983 claim. *See, e.g.*, *McCutcheon v. Tipton County*, 430 F. Supp. 2d 741, 747 n.5 (W.D. Tenn. 2006) (assuming without discussion that husband's loss-of-consortium claims related "only to [his wife's] state law claims," and not her § 1983 claim); *Dean v. City of Bay City*, No. 04-10120-BC, 2005 WL 3579177, at *17 (E.D. Mich. Dec. 30, 2005) (noting, where husband brought claims under § 1983 and state tort law, that the wife bringing a loss-of-consortium claim joined in her husband's state law claims only; citing *Claybrook*, 199 F.3d at 357, in support of the proposition that "a section 1983 does not permit a loss-of-consortium claim because 'a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort' "); *Cross v. City of Chattanooga*, No. 1:04CV108, 2005 WL 2456977, at *11 (E.D. Oct. 3, Tenn. 2005) (dismissing husband's § 1983 claims against city and police officer but nonetheless holding, without significant analysis and completely unnecessarily given that husband's federal claims had been dismissed, that a wife "cannot state a claim for

---

[5]Thus, the holding in *Alexander* was not inconsistent with the Sixth Circuit's assumption in *Purnell* that a state wrongful-death claim, brought in conjunction with a § 1983 claim, could provide for recovery of loss of consortium damages, because Ohio, *Purnell*'s forum state, permitted separate survivor and wrongful-death actions. *See Purnell*, 925 F 2d at 949.

[6]Plaintiffs also cite to *Robinson v. City of Memphis*, 340 F. Supp. 2d 864 (W.D. Tenn. 2004), which again involved family members bringing a § 1983 action on behalf of their deceased relative. The same district court, without referencing *Alexander*, reached basically the same conclusion as the earlier case except that the actual holding was that the decedent's estate could not bring a claim for loss of consortium under § 1983, since loss of consortium was a claim that belonged to decedent's heirs rather than to the decedent. The court also noted in passing that the plaintiffs' loss-of-consortium claim brought in connection with their state-law claims for false arrest, negligence and outrageous conduct was not challenged in the defendants' Rule 12(b)(6) motion. *Robinson*, 340 F. Supp. 2d at 872 n.5.

16

loss of consortium due to any alleged violation of [her husband's] civil rights under Section 1983" (citing. *Niehus*, 973 F.2d at 533–34)); *McNabb v. City of Memphis*, No. 03-2334 ML/P, 2004 WL 2384958, at *6 (W.D. Tenn. Mar. 8, 2004) (dismissing wife's loss-of-consortium claim "as [it] relates to the 42 U.S.C. § 1983 claim because a § 1983 claim is personal to the individual claiming injury," without further discussion except to note that "[p]laintiffs concede[d] that [wife] may not recover for loss of consortium pursuant to § 1983"; however, because plaintiffs also brought state law claims, wife's loss-of-consortium claim in connection with those was not dismissed); *Hakken v. Washtenaw County*, 901 F. Supp. 1245, 1255 (E.D. Mich. 1995) (holding, without discussion, that "[s]ince the state tort claims are dismissed, there can be no claim for loss of consortium"); *Jenkins v. Carruth*, 583 F. Supp. 613, 616 (E.D. Tenn. 1982) (where wife brought § 1983 claims as well as state assault and battery claims against sheriff and county, and husband brought loss-of-consortium claim, the court declined to exercise pendent jurisdiction over the state claims on the basis that they were duplicative of the federal claim but then dismissed the federal claim as barred by the statute of limitations; rather than dismissing husband's loss-of-consortium claim either on the grounds that the claims from which it derived were dismissed, or because it was a pendent state-law claim and the federal claims to which it was appended had been dismissed, the court held that the loss-of-consortium claim had to be dismissed on the basis that "[t]he plaintiffs have not cited, nor has the Court found, any authority permitting a husband to recover damages under 42 U.S.C. § 1983 for the deprivation by a third party of the civil rights of his wife. The law seems clear that one person may not sue, nor recover damages, for the deprivation of another person's civil rights." (citations omitted)).[7]

The primary problem with the district court opinions referenced above, beside the fact that they neglected to provide any significant analysis in support of their assumptions, is that they all failed to recognize

---

[7]A few district courts have gone the other way, similarly without analysis however. *See, e.g.*, *Ferguson v. Leiter*, 220 F. Supp. 2d 875, 886–87 (N.D. Ohio Sept. 18, 2002) (where husband's § 1983 claims were dismissed, the defendants asserted that the wife's derivative loss-of-consortium claim should also be dismissed; the court noted that it had not held that plaintiffs failed to state a claim for excessive force but that the defendant police officers were entitled to qualified immunity; because the Ohio Supreme Court had "determined that a tortfeasor's defense to liability does not necessarily preclude a loss of consortium claim," the court denied summary judgment as to that claim but declined to exercise supplemental jurisdiction over it as the sole remaining state law claim, and therefore dismissed it without prejudice pursuant to 28 U.S.C. § 1367(c))); *Wrubel v. Bouchard*, 173 F. Supp. 2d 716, 725 (E.D. Mich. 2001) (noting that defendants had not moved for summary judgment of wife's loss-of-consortium claim "due to the injuries suffered by" her husband, and stating that "because a claim still exists for violation of [husband's] constitutional rights, summary judgment for the defendants is denied as to this count").

17

the distinction between bringing a claim *under* § 1983 and bringing a pendent state-law claim *alongside* the § 1983 claim. Both *Jaco* and *Purnell* made that distinction; *Purnell*, in particular, recognized that loss-of-consortium damages might be recoverable under the applicable state law governing wrongful-death actions. *Claybrook* did not reach the issue because plaintiffs did not appeal the dismissal of their state-law claims. In both *Stallworth* and *Niehus*, the issue of whether the plaintiffs' loss-of-consortium claims could be brought under § 1983 was before the court only because federal courts did not permit pendent claims at that time unless the particular plaintiff also brought a federal claim. *Niehus,* 973 F.2d at 532; *Stallworth*, 893 F.2d at 837. In other cases, the issue has arisen because plaintiffs for whatever reason simply failed to plead and try their wrongful death claims as their own pendent state-law causes of action, *see, e.g.*, *Andrews v. Neer*, 253 F.3d 1052, 1065 (8th Cir. 2001); *Westcott v. Crinklaw*, 133 F.3d 658, 660 (8th Cir. 1998), or because state law did not permit a separate cause of action, *see, e.g.*, *Alexander*, 108 F. Supp. 2d at 953.

Second, the district court cases cited above failed to explain why a derivative loss-of-consortium claim would not be cognizable in this context when a derivative claim brought under a state wrongful-death statute clearly is. The only significant distinction between a claim for loss of consortium and one for wrongful death is that the latter is theoretically brought by the decedent's estate, even though it inures to the benefit of the decedent's survivors and frequently includes consortium-type damages. A loss of consortium claim, on the other hand, is brought by an entirely different party than the one bringing the § 1983 claim, but 28 U.S.C. § 1367(a) paved the way for such pendent-party claims. In this Court's view, there is no significant distinction between a wrongful-death and a loss-of-consortium claim brought alongside a § 1983 claim. The Sixth Circuit has permitted the former to stand; there is no reason why it would bar the latter.

Finally, the opinions cited above do not explain why permitting a state loss-of-consortium claim would somehow conflict with the purposes of § 1983. It is clear that § 1983 does not preempt other state causes of action premised upon the same conduct, as § 1983 claimants frequently also assert claims under state law for false arrest, assault and battery, and a panoply of other causes of action in conjunction with their § 1983 claims. It would make no sense logically to bar a wife's loss-of-consortium claim where her husband brings only a § 1983 claim, but to allow it where he also brings a claim for assault and battery, given that all these causes of action arise from the exact same set of facts and injuries. Certainly, to allow a wife or husband to recover under her or his own state cause of action for loss of consortium resulting from injuries to the spouse,

18

while not expressly cognizable under federal law, is not barred by it either.

The only other district court within this Circuit to conduct any analysis of the question at issue is *Hayes v. Vessey*, 578 F. Supp. 690 (E.D. Mich. 1984), *rev'd on other grounds*, 777 F.2d 1149 (6th Cir. 1985).[8] In that case the defendant moved for judgment notwithstanding the verdict on a husband's claim for loss of consortium on the grounds that the "derivative claims of plaintiff [husband] for loss of consortium are not cognizable in an action brought under 42 U.S.C. § 1983." *Id.* at 690. The court denied the motion, citing *Hall v. Wooten*[9] in support of the principle that 42 U.S.C. § 1988 "provides that the district courts are to apply the laws of the state in which they sit in determining the scope of the remedies available under the civil rights statutes, insofar as those statutes 'are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law.'" *Id.* at 691 (quoting 42 U.S.C. § 1988). The court held that, because Michigan law "permit[ted] a husband to maintain an action for loss of consortium against a tortfeasor who has caused injury to the wife[,] . . . this state rule concerning the availability of a derivative action for loss of consortium should be applied by virtue of § 1988, to a § 1983 action brought by the husband of the person whose constitutional rights were violated in such a manner as to cause her personal injury." *Id.* The court also distinguished the case of *Pierce v. Stinson*, 493 F. Supp. 609 (E.D. Tenn. 1979), cited by defendant, as that case

> merely concluded that a parent did not have standing under § 1983 to bring an action for violation of the Fourth Amendment rights of the son. The *Pierce* case stands for the unremarkable proposition that one person may not recover for an injury that results from unconstitutional conduct directed at another merely because the first stands in the position of a legally cognizable relationship to that other. *By contrast, [plaintiff husband] brought suit to recover damages in this case for injuries that were incurred by himself, the impairment of his marital relationship with his wife, in which relationship he had his own legally cognizable interest.*

*Hayes*, 578 F. Supp. at 690 (emphasis added).

Although the Sixth Circuit has indicated that § 1988 is simply not relevant to the question of whether

---

[8]The Sixth Circuit reversed judgment against the defendant on the plaintiff's equal protection claim due to lack of evidence of proximate cause, and therefore held that the defendant also could not be liable on the husband's derivative claim for loss of consortium. 777 F.2d at 1154.

[9]In *Hall*, the Sixth Circuit simply confirmed the principal that one person generally does not have standing to sue for civil rights violations inflicted on another, citing *Tyree v. Smith*, 289 F. Supp. 174 (E.D. Tenn. 1968), in which the court held that a father not acting in his representative capacity had no standing to sue for the deprivation of the civil rights of his child. *Hall*, 506 F.2d at 566.

a pendent claim for loss of consortium is permissible in this context, *see Jaco*, 739 F.2d at 243 n.5, this Court agrees with the remainder of the analysis in *Hayes*: Because Tennessee law permits a wife to maintain an action for loss of consortium against a tortfeasor who has caused injury to the husband, a derivative claim for loss of consortium is available in the context of § 1983 action brought by a person whose constitutional rights were violated in such a manner as to cause him personal injury. The wife should be permitted to recover damages for injuries that she personally incurred through the impairment of her marital relationship with her husband, in which relationship she has her own legally cognizable interest. *See Hayes*, *supra*.[10] Her claim is not brought under § 1983 but alongside it as a pendent state claim, over which this Court has jurisdiction pursuant to 28 U.S.C. § 1367(a).

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that Ms. Kinzer has adequately pleaded a pendent state-law claim for loss of consortium, regardless of the fact that the cause of action to which it is appended is brought under § 1983. Ms. Kinzer's claim is not brought *under* § 1983, nor is it preempted by § 1983. Defendants' motion to dismiss the loss-of-consortium claim will therefore be denied. An appropriate order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

[10]*Cf. Kulling v. Grinders for Indus., Inc.*, 115 F. Supp.2d 828 (E.D. Mich. 2000), in which the district court held that loss-of-consortium and wrongful-death damages were not available under the ADEA itself. Citing *Jaco* and other analogous opinions under § 1983, however, the court also noted that "the same alleged wrong . . . might trigger recoveries under both the ADEA and the state [wrongful-death] statute," *id.*, that the state wrongful-death and loss-of-consortium claims were separate and apart from the ADEA action, and that the former were not preempted nor foreclosed by the latter. *Id.* at 850. As in other cases referenced above, the plaintiff had a specific incentive to attempt to recover wrongful-death and consortium damages directly under the ADEA: Her state-law claims were barred by a "Severance Agreement and General Release" executed by the decedent prior to his death. *See Kulling*, 115 F. Supp. 2d at 851.

20